### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

| | |
|---|---|
| _____ : | **MDL DOCKET NO. 1586** |
| : | |
| : | **Hon. J. Frederick Motz** |
| **IN RE MUTUAL FUNDS** : | |
| **INVESTMENT LITIGATION** : | **MDL Case No.** |
| : | **04-md-15861** |
| : | **(Hon. Catherine C. Blake)** |
| : | |
| **This Document Relates To:** : | **MDL Case No.** |
| **All Fund Derivative Actions** : | **04-md-15862** |
| : | **(Hon. Andre M. Davis)** |
| : | |
| : | **MDL Case No.** |
| : | **04-md-15863** |
| : | **(Hon. J. Frederick Motz)** |
| : | |
| : | **MDL Case No.** |
| : | **04-md-15864** |
| : | **(Hon. Frederick P. Stamp, Jr.)** |
| _____: | |

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF
### PARENT DERIVATIVE PLAINTIFFS' MDL AND INTERNAL
### LEAD STRUCTURE PROPOSALS AND IN OPPOSITION TO FUND
### CLASS ACTION COUNSELS' [PROPOSED] CASE MANAGEMENT ORDER NO 1

### INTRODUCTION

Parent Derivative Plaintiffs submit this Memorandum Of Law in Further Support of their Motion for Entry of an Order Adopting Proposed Organizational Structure for the MDL Proceeding ("Proposed Organization Order") and Proposed Order Appointing Lead Counsel for the Parent Derivative Claims. The fundamental premise behind both Parent Derivative plaintiffs' proposed MDL organizational structure, and the appointment of the internal leadership structure that counsel for each sub-sub-track

has successfully organized, is the authorization of unconflicted counsel to act in an effective fashion on behalf of the distinct claims they represent, and to hold these counsel responsible for the efficient coordination of the cases within each individual fund family sub-track, as well as across all fund family sub-tracks.  This proposed organizational structure is consistent with the approach other courts have taken in complex proceedings, recognizing the need for separate representation of distinct claims while at the same time promoting coordination of pre-trial proceedings to the fullest extent possible.

Parent Derivative plaintiffs also submit this Memorandum in opposition to Fund Class Action counsel's motion for entry of their proposed MDL organizational structure (see [Proposed] Case Management Order No. 1"), which provides at both the vertical sub-track and sub-sub-track levels, and at the horizontal cross-track level, for their control over all claims, regardless of the adverse interests involved among the sub-sub-tracks.  Their proposed MDL organizational structure is contrary to positions they themselves have taken in prior litigations,[3] and is undermined by both the authority they inaccurately present to the Court, and by the weight of authority of those courts asked to address the coordination of similar types of distinct claims.  As described more fully below, Fund Class Action counsel fail to address, either on legal grounds or factually, the distinct nature of the Parent Derivative claims, the fundamental conflict between these claims and their own, and the implication of these conflicts for the appropriate organizational structure of the cases.

---

[3]      See e.g. Tepper v. Analytical Survey, Inc., C.A. No. 00-0201, 2001 U.S. Dist. LEXIS 5589 (S.D. Ind. April 11, 2001), where Milberg Weiss (as one of lead counsel for PSLRA appointed lead securities plaintiffs) opposed the intervention of derivative claims into the 10(b) federal securities action.  The Court recognized: "Moreover, as the Class asserts in its brief, to the extent that Mr. Green's interests in the derivative claims conflicts with those of the Class in the securities litigation, the Court would be hard pressed to allow both types of litigations to proceed simultaneously. [citations omitted]." Id. at *12.

**FACTUAL STATEMENT**

**A Clear Conflict Exists Between The Interests Of
Plaintiffs In The Parent Derivative Cases And
Plaintiffs In The Fund Class Action Cases**

Fund Class Action counsels' proposed MDL organizational structure hinges on their contention that no "real" conflict of interest exists between class and derivative claims in these MDL proceedings. Fund Class Action counsel are silent in their Memorandum In Support Of Proposed Organizational Structure (the "Memo"), however, with respect to the conflicts that exist between the Parent Derivative claims and their own.  Fund Class Action counsel represent purchasers of mutual fund shares, seeking recovery from the mutual funds themselves, independent fund advisor companies under contract to the funds, and/or parent holding companies of the fund advisor companies based on federal securities law violations.  These claims seek compensation <u>to</u> mutual fund purchasers by maximizing recovery <u>against</u>, among others, the parent holding companies of the investment advisor companies.

The Parent Derivative Cases, asserted on behalf of the wholly distinct parent holding companies of the fund investment advisor companies, allege breach of fiduciary duty by their directors and officers in failing to ensure that adequate and reasonable compliance systems and controls were in place to oversee the conduct of their fund investment advisor subsidiaries.  Recovery is sought on behalf of the parent holding companies to make them whole for the damages they have incurred in connection with the alleged wrongdoing.  In short, the Parent Derivative Cases are causes of action designed to put money back into the parent holding companies.  Counsel for the Parent Derivative Cases have a fiduciary duty to maximize recovery to the parent holding companies, and have no interest in seeking compensation for mutual fund shareholders.  Conversely, the Fund Class Action counsel have a clear fiduciary duty to

3

maximize any payments <u>by</u> these parent holding companies to the fund shareholders, and have no interest

in seeking compensation for the parent holding companies.  These facts, and their implications under the

case law Fund Class Counsel cite in support of their proposed MDL organizational structure, go

unaddressed in their submission.

**Recent MDL Courts Have Instituted Organizational
Structures Similar To Parent Derivative Counsels'
Proposed Organization Order**

Rather than placing control of divergent claims with one group of counsel, the transferee court in

the recent UnumProvident MDL proceeding adopted a structure similar to the one Parent Derivative

counsel propose here for the vertical organization of the fund family sub-tracks.  The UnumProvident

litigation involves one primary defendant but multiple distinct claim types.[4]  The MDL Court in

UnumProvident provided for the appointment of lead counsel for each claim type.[5]  The Court then

placed the responsibility for the coordination of the litigation of the claims through the pre-trial process

on the designated lead counsel.

> Lead Counsel shall be generally responsible for conducting the litigation
> and coordinating activities in their respective case(s).  Lead Counsel shall

---

[4]	Claims alleged in the UnumProvident MDL proceeding include PSLRA securities claims (related to two distinct types of securities), improper denial of claims under ERISA, fiduciary duty violations in connection with funding the company's ERISA 401(k) retirement plan, and derivative claims.

[5]	Denying the motion of Milberg Weiss to consolidate PSLRA claims on behalf of two groups of securities purchasers, those that bought UnumProvident common stock and those that bought Corporate-Backed Trust Securities ("CorTS"), the MDL court appointed separate PSLRA lead counsel for each type of securities claim.  <u>See</u> UnumProvident MEMORANDUM AND ORDER, Exhibit C to Declaration of Mark C. Rifkin In Support Of Fund Derivative Plaintiffs' Motion For Entry Of Case Management Order No. 1., filed April 19, 2004 (the "Rifkin Decl.")

> take all steps necessary to ensure the cases are managed efficiently, there is
> no duplication of effort or work by Lead Counsel or other Plaintiffs'
> counsel, and no work is undertaken by any of Plaintiffs' counsel which
> does not advance the interest of Plaintiffs and the putative class.

In re UnumProvident Corp. Securities, Derivative, & ERISA Litigation, ML Case No. 1:03-md-1552, SECOND MANAGEMENT ORDER (E. D. Tenn. Jan. 26, 2004) ("UnumProvident SECOND MANAGEMENT ORDER") (attached as Exhibit 1 to the Declaration of Karen L. Morris ("Morris Decl."), filed herewith), p. 6-7. The SECOND MANAGEMENT ORDER set forth specific responsibilities of lead counsel for the effective litigation "in their respective case(s), to be carried out either personally or through such counsel as Lead Counsel may designate, with emphasis on these three main areas of responsibility: (1) mediation, (2) discovery, and (3) pretrial litigation and motion practice." Order, p.7. Counsel representing the direct action claimants in UnumProvident, the same counsel representing the Fund Class Claims here, did not there seek to exert control over the derivative claims.

As in UnumProvident, Parent Derivative plaintiffs' MDL organizational proposal imposes on lead counsel for each claim type the Court-ordered responsibility to coordinate their efforts, to avoid duplication, and to efficiently litigate the cases within the framework of the overall MDL proceeding. This coordination will be assured through the creation of Vertical Sub-Track Committees for each fund family sub-track, comprised of representatives of each sub-sub-track, with specified responsibilities regarding coordination in all pre-trial proceedings, including document discovery and review, deposition discovery, and pre-trial motions, as appropriate.[6] See e.g., Proposed Organization Order, ¶¶6.a-d.

---

[6]     This Court-ordered obligation to effectively coordinate all possible aspects of the litigation belies the repeated contention of Fund Class Action counsel that: "Derivative counsel insist that they require complete autonomy to prosecute their claims as they see fit." See e.g. Memo at 20.

To address the multi-party reality of this litigation (18 separate fund family sub-tracks), the Proposed Organization Order provides for the creation of a Horizontal Coordinating Committee. Each distinct claim type is represented on this Committee. Pursuant to the terms of the Proposed Organization Order, the Horizontal Coordinating Committee is charged with the direct responsibility of minimizing any duplication of effort, and with coordinating all pre-trial proceedings across fund family sub-tracks to the fullest extent possible. See e.g., Proposed Organization Order, ¶¶3 and 4 a-d. The Proposal further provides for the designation of liaison counsel, one from each claim type, to serve as spokesperson with the Court and defense counsel. Thus, as the Order entered in the UnumProvident litigation recognizes, and as Parent Derivative counsel propose, an appropriate structure can be devised to provide for the efficient prosecution of diverse claims in an MDL proceeding without the imposition of one claim's lead structure overarching the entire proceeding.

**Fund Class Action Counsels' Proposed**
**MDL Organizational Structure**

Fund Class Action counsels' proposed structure, through their proposed organization at both the vertical sub-track level and the horizontal level, places the litigation of adverse claims in their sole control. With respect to the vertical sub-track level, their [Proposed] Case Management Order No 1 provides:

- At the sub-track level, provision I.B. requires the consolidation, not the coordination, of all claims filed in a particular fund family sub-track regardless of the inherent conflicts of interest between the multiple claim types.

- This same provision further appoints their designated Fund Class Action counsel as Lead Counsel for all claims under each "Consolidated Sub-Track."

- Provision II.A.2. specifies that: "No complaint, motion, request for discovery, other pre-trial proceeding, or settlement negotiation shall be initiated or filed by any plaintiff except through respective Lead Counsel [in the Fund Class Action cases]."

- Provision III.1.d. reserves to their appointed lead counsel sole authority to "act as, or as appropriate, assign lead spokespersons at all hearings, pre-trial discovery and other conferences with respect to the relevant Consolidated Sub-Track."

- Provision III.1.e. authorizes them to "schedule and take the lead role in conducting depositions."

- Provision III.1.g. limits to their Lead Counsel the authority to "coordinate settlement negotiations" for all claims brought against any defendants within the particular fund family sub-track, including claims that directly conflict with their own claims.

- Provision II.A.1.h. leaves to the discretion and authority of Fund Class Action Lead Counsel the final determination even of whom counsel for a sub-sub-track can name as plaintiffs or defendants for their claims.

Recognizing the conflicts that exist, Fund Class Action counsel make much of their proposed creation of sub-sub-track Plaintiffs' Committees within each fund family sub-track; however, provision III.B.2. makes clear these proposed Plaintiffs' Committees have no authority independent of that conferred on them in the discretion of the Fund Class Action Lead Counsel. See Sections III.B.2. and 3 (section III.B.2.b., for example, limits any work on complaints, motions, briefs, or discovery related to any sub-sub-track claims by any Plaintiffs' Committee only to that authorized: "at the request of Lead Counsel).

This same emphasis on control to Fund Class Action counsel is found in the structure and responsibilities of their proposed Horizontal Steering Committee. Fund Class Action counsel place eight of their own counsel on their Horizontal Committee, including two named as Committee Co-Chairs, and permit only one representative from each of the Fund Derivative and Parent Derivative claims. Further

solidifying their authority, pursuant to Section III.C.3. of their [Proposed] Case Management Order No. 1, the two Co-Chair Fund Class Action counsel are appointed spokespersons for plaintiffs' counsel "on common cross-case issues during hearings, conferences and communications with the Court," and (as noted above) Sections III.A.g. and III.A..2. limit any communication with either the Court or defense counsel on all other issues to Fund Class Action Lead Counsel, absent prior authorization from these counsel.

Other than by mere assertion of the proposition, Fund Class Action counsel can provide no support for their claim that effective coordination requires their control of the litigation.  As discussed below, the presence of the conflicts among the divergent claim types here undermines their legal support for the structure they put forward.[7]

---

[7]     Fund Class Action counsels' proposed objection process to the Court (see Section III.F.) is an additional reflection of their recognition of the fundamental conflicts of interest that exist between the various claims before the Court in this MDL proceeding.

**ARGUMENT**

I.     **Fund Class Action Counsels' Reliance**
       **On PSLRA Cases Is, At Best, Misguided**

In support of their position that they should be given virtually complete control of the vertical fund family sub-tracks, Fund Class Action counsel argue that "the provisions of the [PSLRA] provide the best and most logical framework" for deciding the issue. The Parent Derivative plaintiffs respectfully submit that this argument is, at best, misguided. First, there is simply no statutory basis for making a PSLRA lead plaintiff the lead plaintiff in a related derivative litigation. Second, not one of the cases cited by Fund Class Action counsel grants a PSLRA lead plaintiff such a role in related derivative litigation -- in fact, the cases they rely upon either refuse to consolidate derivative actions with securities class actions and/or explicitly appoint separate lead plaintiffs in the derivative actions.[8]

The provisions of the PSLRA, including its provisions relating to the selection of lead plaintiffs and lead counsel, apply <u>only</u> to private actions under the 33 Act and 34 Act that are brought "as plaintiff class actions." <u>See</u> 15 U. S. C. § 77z-1 (a) (1); 15 U. S. C.  § 78u-4(a)(1); <u>In re FirstEnergy</u> <u>Shareholder</u> <u>Derivative Litigation</u>, 219 F.R.D. 584, 586 (N. D. Ohio 2004)("The PSLRA, by its terms, is limited to actions under the federal securities laws and does not apply outside this context."). No mention is made

---

[8]       In <u>TCW Technology Limited</u> <u>Partnership v. Intermedia Communications, Inc</u>. 2000 Del. Ch. LEXIS 147 (Oct. 17, 2000), the Court entered an Order consolidating direct and derivative state law claims solely for the purposes of a "radically compressed preliminary injunction schedule." <u>Id.</u> at *4. As discussed <u>infra</u>, the <u>TCW</u> case is one among several cases cited by Fund Class Action counsel involving direct and derivative claims asserted by shareholders of the same company, a situation different from that presented here, where Fund Class Action counsel seek control over derivative claims on behalf of a different company than the one in which their clients invested.

of application to derivative actions, or even to actions arising under state law fiduciary duty principles. The language of the PSLRA is unambiguous in this regard.

Reinforcing this point, when Congress adopted the State Law Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (1998) (codified as amended in part at §§15 U.S.C. 77p & 78bb(f), which essentially provided for preemption of state law claims brought in a representative capacity with respect to publicly-traded companies, it specifically exempted "shareholder derivative actions." See 15 U.S.C. §77p(f)(2)(B); Lander v. Hartford Life & Annuity Insurance Co., 251 F.3d 101, 113 (2d Cir. 2001). Thus, Congress has clearly stated that the PSLRA does not apply to such actions. The fact that Congress never manifested any intention to apply the PSLRA provisions to derivative actions -- and in fact did the opposite-- renders irrelevant the Fund Class Action counsels' invocation of Congressional policy in support of their attempt to control the derivative actions in this litigation. See Memo p. 11.

The very cases cited by Fund Class Action counsel undermine their position. In In re Conseco Inc. Securities Litigation, 120 F.Supp. 2d 729 (S. D. Ind. 2000) (Memo p. 11), the court separately consolidated the securities class actions and the derivative actions, appointed a lead plaintiff (and approved the Bernstein Litowitz firm as lead counsel) for the securities actions, and also appointed a separate lead plaintiff (and approved separate lead counsel) for the derivative actions. Id., 120 F. Supp.2d at 731, 732-734. Likewise, in the Cendant litigation (In re Cendant Corp. Litigation, 182 F. R. D. 144 (D.N.J. 1998) (Memo p. 13, as quoted by the Aronson opinion, see discussion below)), the court "consolidated all the shareholder suits against Cendant, with the exception of a shareholder derivative action." In re Cendant Corp. Litigation, 60 F. Supp.2d 354, 359 (D. N. J. 1999)(emphasis added).

Fund Class Action counsels' most troubling use of prior judicial rulings, however, is their discussion of Aronson v. McKesson HBOC, Inc, 79 F. Supp.2d 1146 (N. D. Cal. 1999), found at Memo pp. 12-13.  They cite the case for the proposition that in large, high profile cases, courts have consolidated "niche" claims under the leadership of the shareholder with the largest financial interest, and then specifically suggest that the "niche" claims treated in Aronson are "like" derivative claims such as those at issue here.  Aronson held exactly the opposite with respect to derivative claims, ruling in a subsequent order that derivative claims should not be consolidated with securities class action claims. See In re McKesson HBOC, Inc. Securities Litigation, Master File No. C-99-20743-RMW, ORDER at 3-4 (Feb. 7, 2000) (the "Feb. 7 Aronson Order,"attached as Exhibit 2 to the Morris Decl.).  Even in the Aronson opinion that Fund Class Action counsel do cite, the court specifically withheld decision on the question of whether the related derivative action pending before the court should be consolidated with the securities class actions, stating that the issue "deserves to be addressed separately."  Aronson, 79 F. Supp.2d at 1151-52.   In the Feb. 7 Aronson Order, the court ultimately ruled:

> The Cohen derivative suit is one of several shareholder derivative suits that were filed in courts around the country as a result of the April 1999 drop in McKesson stock.  The parties agree that Cohen presents virtually identical issues of fact with the federal securities claims. However, there are concerns about conflicts between the securities and derivative actions.  A major concern is that the derivative suit is brought on behalf of the corporation, while the securities suit is brought against the corporation. Cohen notes that other courts have declined to consolidate securities class actions with derivative actions for this very reason. See Koenig v. Benson, 117 F. R. D. 330 (E. D. N. Y. 1987); Ruggiero v. American Bioculture, Inc., 56 F. R. D. 93 (S. D. N. Y.1972).  Cohen also notes that the class of shareholders in the derivative suit is not identical to the securities class, and that the large amount of damages may eventually cause conflicts regarding the distribution of any settlement or judgment.

* * *

> Given the ready potential for conflicts between the derivative class and the securities class, the court will not consolidate <u>Cohen</u> with the securities class action.  However, as with <u>Chang</u> [the ERISA action that the court also declined to consolidate], the court directs that this case be coordinated with the other related cases to the greatest extent practicable.

<u>Id.</u> at 3-4.  Put simply, contrary to the Fund Class Action counsels' characterization of the <u>Aronson</u> precedent (Memo p. 12), the derivative plaintiffs in <u>Aronson</u> were <u>not</u> treated "like" the niche securities claimants at all; instead, the court specifically recognized that consolidation of the derivative action with the securities class actions was inappropriate due to fundamental conflicts of interest.

None of the other PSLRA cases cited by Fund Class Action counsel support their position.  Neither <u>In re Initial Public Offering Securities Litigation</u>, 214 F. R. D. 117 (S. D. N. Y. 2002), nor <u>In re Enron Corporation Securities Litigation</u>, 206 F. R. D. 427 (S. D. Tex. 2002) addressed the issue of granting control over related derivative litigation to a PSLRA lead plaintiff, or of consolidating derivative claims and securities class actions.  Instead, they addressed whether niche securities claimants required separate lead plaintiff representation wholly within the context of other direct PSLRA claims.[9]  As recognized by the <u>Aronson</u> court, the PSLRA niche claimant issue and the derivative action issue are completely different, deserve separate consideration, and yield different results.[10]  The same distinction

---

[9]      The focus of the PSLRA "niche" claim cases is the determination under the securities laws of whether sub-groups of plaintiffs who have brought differing substantive claims regarding the same security, or who have brought claims on behalf of purchasers of a security other than the common stock (<u>e.g.</u> bond holders), require separate lead plaintiff representation within the context of the PSLRA lead plaintiff provisions.  <u>See</u> <u>Aronson</u>,  79 F. Supp.2d at 1150.

[10]      Even wholly within the PSLRA context, a conflict of interest between a Lead Plaintiff and a discreet claimant group may require separate lead plaintiffs to be appointed. <u>See</u>

applies to <u>In re Dynegy Inc Sec. Litig</u>, Civ. No. H-02-1571 (S. D. Tex. Oct. 28, 2002)(PSLRA opinion involving no treatment or discussion of any derivative litigation).

Other relevant cases not cited by Fund Class Action counsel further support the finding that PSLRA securities cases and derivative claims should be treated separately.  <u>See e.g.</u>, <u>In re Oxford Health Plans, Inc.</u>, 182 F. R. D. 42, 43 n.1 (S. D. N. Y.  1998)(class and derivative claims were ordered to be "administered separately"); UnumProvident SECOND MANAGEMENT ORDER (Exhibit 1 to Morris Decl.) (ordering that securities class actions, derivative actions, and ERISA actions be coordinated, not consolidated, and appointing separate lead plaintiffs for each type of action); <u>Hall v. Case</u>, C. A. No. 02-cv-6302, ORDER (S.D.N.Y. Mar. 26, 2003) (attached as Exhibit 3 to Morris Decl.) (appointing separate lead plaintiff in derivative litigation related to pending PSLRA securities class actions against AOL TimeWarner); <u>Irvine v. Imclone Systems, Inc., et. al</u>, 2002 U.S. Dist. LEXIS 10107 (S.D.N.Y. June 6, 2002) ("<u>Imclone</u>") (S.D.NY. consolidated 10(b) securities fraud class actions together, but rejected the proposed consolidation of the derivative cases, instead appointing separate lead counsel for these claims, and directing that the parties coordinate discovery to the extent possible).

Apart from their mischaracterization of recent authorities, Fund Class Action counsel offer a string cite of dated case law which has been overtaken by decisions of courts (discussed above) that have

---

<u>In re Cendant Corp. Litigation</u>, 182 F. R. D. 144, 149 (D. N. J.  1998)(where presumptive lead plaintiff had substantial investment in underwriter of securities held by discreet claimant subgroup, separate lead plaintiffs appointed; despite presumptive lead plaintiff's pledge to "pursue any and all viable claims against" underwriter, court held that "logic and simple mathematics speak louder."). <u>See</u> <u>also</u>  <u>In re Williams Securities Litigation,</u> 02-cv-72-H(m), ORDER (N. D. Oklahoma July 8, 2002) (separate lead plaintiffs appointed for separate subclasses) (cited by Fund Class Action counsel at page 14-15 of their brief); UnumProvident Memorandum and Order (Exhibit C to Rifkin Decl.)(court appointed separate lead counsel for purchasers of common stock securities and for purchasers of the CorTS securities).

more recently considered the issue.  Even their purported "better authority" does not address the Parent

Derivative claims here, which seek recovery from entities wholly independent from the mutual funds

against whom Fund Class Action plaintiffs seek recovery.  With respect to the issue of consolidation,

Fund Class Action counsel technically seek consolidation of all sub-track claims in their [Proposed] Case

Management Order No. 1, but nowhere address the legal underpinning for consolidation.  The cases Fund

Class Action counsel otherwise cite specifically reject consolidation of PSLRA securities class actions

with derivative claims.  See e.g., Feb. 7 Aronson Order; Imclone; In re Cendant Corp. Litigation, 60

F.Supp.2d at 359;

### CONCLUSION

For the reasons set forth herein and in their other papers before this Court, plaintiffs for the Parent

Derivative Cases respectfully request the Court deny entry of Fund Class Action plaintiffs' [Proposed]

Case Management Order No. 1, and enter the Parent Derivative plaintiffs' Proposed Organization Order

establishing their proposed described organizational structure imposing both horizontal and vertical

responsibilities and safeguards, as agreed to by counsel for the Parent Derivative Cases, the Fund

Derivative Cases, and, as it pertains to them, counsel for the related state court cases.  Likewise, plaintiffs

for the Parent Derivative Cases further respectfully request the Court enter the proposed Order

appointing the firms of Morris and Morris, The Law Offices Bernard M. Gross P.C., and Bull & Lifshitz,

LLP as Lead Counsel for the Parent Derivative Cases.

Date: April 26, 2004


MORRIS AND MORRIS LLC
COUNSELORS AT LAW

14

/s/_____
Karen L. Morris
1105 North Market Street, Suite 803
Wilmington, Delaware 19801
(302) 426-0400
(302) 426-0406 - fax

LAW OFFICES BERNARD M. GROSS, P.C.


/s/_____
Deborah R. Gross
1515 Locust Street, Second Floor
Philadelphia, PA 19102
(215) 561-3600
(215) 561-3000 - fax

BULL & LIFSHITZ, LLP


/s/_____
Joshua M. Lifshitz
18 East 41st Street
New York, NY 10017
(212) 213-6222
(212) 213-9405 - fax

On Behalf of All Parent Derivative Cases

**CERTIFICATE OF SERVICE**

I, Patrick F. Morris, do hereby certify that on this 26th day of April, 2004, a true and correct copy of Memorandum Of Law In Further Support Of Parent Derivative Plaintiffs' MDL And Internal Lead Structure Proposals And In Opposition To Fund Class Action Counsels' [Proposed] Case Management Order No 1, and Declaration of Karen L. Morris, with Exhibits, was electronically filed in this case and was electronically served on counsel of record in Portable Document File ("PDF") format.

/s/_____
PATRICK F. MORRIS