**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In Re Mutual Funds Investment Litigation | 04-md-15861 |
| | 04-md-15862 |
| This Document Relates | 04-md-15863 |
| to All Tracks | 04-md-15864 |

**OMNIBUS REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE ERISA CLASS COMPLAINTS**

## Table of Contents

Page

PRELIMINARY STATEMENT .......................................................................................1

ARGUMENT..................................................................................................................1

I.    The Former Plan Participants Lack Both Constitutional and
      Statutory Standing.................................................................................................1

      A.    By Their Silence, Plaintiffs Effectively Acknowledge That
            The Available Relief Cannot Redress The Injuries That
            Former Participant Plaintiffs Allegedly Suffered. ..........................2
      B.    Former Participant Plaintiffs Also Lack Standing Under
            ERISA. ..............................................................................................3

II.   Plaintiffs Have Not Adequately Pleaded That Defendants Are
      ERISA Fiduciaries. ...............................................................................................6

      A.    Plaintiffs' Complaints Fail To Meet Rule 9(b). ...............................6
      B.    Plaintiffs' Complaints Fail To Meet Rule 8(a). ...............................8
      C.    Plaintiffs Have Failed to Allege Facts That Would
            Demonstrate That Defendants Are Plan Fiduciaries.........................9
      D.    Plaintiffs Characterize Defendants as "De Facto"
            Fiduciaries Without Alleging Facts to Show Defendants
            Performed Any Fiduciary Function. ...............................................11

III.  The Complaints Fail To State Claims For Co-Fiduciary Liability. ...........13

IV.   The Prohibited Transactions Claims Must Be Dismissed...........................14

V.    Plaintiffs Have Failed To Allege Circumstances Sufficient to
      Overcome the *Moench/Kuper* Presumption That Investment in
      Company Stock is Prudent....................................................................................15

      A.    The *Moench/Kuper* Presumption Is Applicable To 401(k)
            Plans.................................................................................................16
      B.    Plaintiffs' Allegations Fall Far Short Of Overcoming The
            *Moench/Kuper* Presumption. ........................................................18

VI.   Plaintiffs' Misrepresentation Claims Should Be Dismissed.....................20

VII.  Plaintiffs Cannot Save Their "Duty to Monitor" Claim. ...........................22

CONCLUSION................................................................................................................25

<u>Table of Authorities</u>

<u>Page</u>

## FEDERAL CASES

*A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*,
 964 F. Supp. 147 (S.D.N.Y. 1997) ........................................................................24 n. 14

*Adamczyk v. Lever Brothers Co.*,
 991 F. Supp. 931 (N.D. Ill. 1997) ....................................................................7, 8 n.4

*Arevalo v. Herman*,
 No. 3:01CV512, 2002 U.S. Dist. LEXIS 7076 (E.D. Va. Apr. 12, 2002) ....................12

*Baird v. CSX Transportation, Inc.*,
 704 F. Supp. 100 (W.D. Va. 1989) .................................................................................4

*Bass v. E.I. Dupont De Nemours & Co.*,
 324 F.3d 761 (4th Cir. 2003)............................................................................................8

*Beam v. HSBC Bank USA*,
 No. 02-CV-0682E(F), 2003 WL 22087589 (W.D.N.Y. Aug. 19, 2003) ...............10 n. 6

*Bradley v. United States*,
 161 F.3d 777 (4th Cir. 1998)....................................................................................5 n.2

*Brengethsy v. LTV Steel (Republic) Hourly Pension Plan*,
 241 F.3d 609 (7th Cir. 2001)....................................................................................5 n.2

*Chicago Board Options Exchange v. Connecticut General Life Insurance Co.*,
 713 F.2d 254 (7th Cir. 1983)...............................................................................24 n.14

*Coleman v. Nationwide Life Insurance Co.*,
 969 F.2d 54 (4th Cir. 1992)..........................................................................................11

*Coyne & Delany Co. v. Selman*,
 98 F.3d 1457 (4th Cir. 1996).................................................................... 23, 24 & n.14

*Crosby v. Bowater Inc.*,
 382 F.3d 587 (6th Cir. 2004).....................................................................................5 n.2

*Custer v. Sweeney*,
 89 F.3d 1156 (4th Cir. 1996)..........................................................................................10

*Dura Pharms., Inc. v. Broudo*,
 125 S. Ct. 1627 (2005) ..............................................................................................8-9

i

Table of Authorities (cont'd)

*Faircloth v. Lundy Packing Co.,*
  91 F.3d 648 (4th Cir. 1996)...........................................................................................21

*Firestone Tire & Rubber Co. v. Bruch,*
  489 U.S. 101 (1989) .......................................................................................................4

*Foltz v. U.S. News & World Report, Inc.,*
  865 F.2d 364 (D.C. Cir. 1989) .....................................................................................17

*Freilich v. Board of Directors of Upper Chesapeake Health, Inc.,*
  142 F. Supp.2d 679 (D. Md. 2001) .........................................................................14 n.8

*Fremont v. McGraw-Edison Co.,*
  606 F.2d 752 (7th Cir. 1979)........................................................................................14

*Gardner v. E. I. Dupont De Nemours & Co.,*
  No. 97-2462, 1998 WL 743669 (4th Cir. Oct. 28, 1998)................................................4

*Griggs v. E.I. DuPont de Nemours & Co.,*
  237 F.3d 371 (4th Cir. 2001)...........................................................20, 21, 22, 24 n.15

*Harley v. Minnesota Mining & Manufacturing Co.,*
  284 F.3d 901 (8th Cir. 2002)..........................................................................................1

*Harrison v. Westinghouse Savannah River Co.,*
  176 F.3d 776 (4th Cir. 1999).....................................................................................6 n.3

*Howell v. Motorola, Inc.,*
  337 F. Supp.2d 1079 (N.D. Ill. 2004) ........................................................................9 n.5

*In re AEP ERISA Litigation,*
  327 F. Supp. 2d 812 (S.D. Ohio 2004)..........................................................................22

*In re Calpine Corp. ERISA Litigation,*
  No. C-03-1685 SBA,
  2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ...................................... 17, 19, 20 & n.11

*In re CMS Energy ERISA Litigation,*
  312 F. Supp.2d 904 (E.D. Mich. 2004) ......................................................11 n.6, 20 n.11

*In re Duke Energy ERISA Litigation,*
  281 F. Supp.2d 786 (W.D.N.C. 2003)...........................................................................19

ii

Table of Authorities (cont'd)

*In re Dynegy, Inc. ERISA Litigation,*
   309 F. Supp.2d 861 (S.D. Tex. 2004) ............................................................23

*In re Electronic Data Systems Corp. ERISA Litigation,*
   305 F. Supp.2d 658 (E.D. Tex. 2004) ...........................................................9 n.5

*In re Enron Corp. Securities, Derivative and "ERISA" Litigation,*
   284 F. Supp.2d (S.D. Tex. 2003) .................................................................24 n.14

*In re Ikon Office Solutions, Inc. Securities Litigation,*
   86 F. Supp.2d 481 (E.D. Pa. 2000) ...............................................................10 n.6

*In re McKesson HBOC, Inc. ERISA Litigation,*
   No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal. Sep. 30, 2002).........................23

*In re Sears, Roebuck & Co. ERISA Litigation,*
   No. 02 C 8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004)...................................20 n.11

*In re Sprint Corp. ERISA Litigation,*
   No. 03-2202-JWL, 2004 WL 1179371 (D. Kan. May 27, 2004)...................................12

*In re Worldcom, Inc. ERISA Litigation,*
   263 F. Supp.2d 745 (S.D.N.Y. 2003) ............................................................9 n.5

*In re Worldcom, Inc. ERISA Litigation,*
   354 F. Supp.2d 423 (S.D.N.Y. 2005) .............................................................13

*Kuper v. Iovenko,*
   66 F.3d 1447 (6th Cir. 1995)...................................................5 n.2, 16, 17, 18

*Kuper v. Quantum Chemical Corp.,*
   829 F. Supp. 918 (S.D. Ohio 1993)..............................................................5 n.2

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .............................................................................2, 3

*Maniace v. Commerce Bank of Kansas City, N.A.,*
   40 F.3d 264 (8th Cir. 1994).......................................................................13

*Migdal v. Row Price-Fleming International, Inc.,*
   248 F.3d 321 (4th Cir. 2001)......................................................................8

Table of Authorities (cont'd)

Page

*Moench v. Robertson*,
  62 F.3d 553 (3d Cir. 1995) ..................................................................16, 17

*Rankin v. Rots*,
  220 F.R.D. 511 (E.D. Mich. 2004) ..........................................................5 n.2

*Rankin v. Rots*,
  278 F. Supp.2d 853 (E.D. Mich. 2003) ..................................................10 n.6

*Rego v. Westvaco Corp.*,
  319 F.3d 140 (4th Cir. 2003) ....................................................................21

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) .......................................................................7

*Stanton v. Gulf Oil Corp.*,
  792 F.2d 432 (4th Cir. 1986) ......................................................................4

*Steinman v. Hicks*,
  252 F. Supp.2d 746 (C.D. Ill. 2003) ..........................................................17

*Swinney v. General Motors Corp.*,
  46 F.3d 512 (6th Cir. 1995) ......................................................................4, 5

*Tootle v. ARINC, Inc.*,
  222 F.R.D. 88 (D. Md. 2004) .....................................................................20

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ..................................................................8 n.4

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) .................................................. 13-14, 17, 19

## FEDERAL STATUTES

ERISA § 203(e)(1), 29 U.S.C. § 1053(e)(1) ................................................5 n.2

ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2) ..........................................16 n.10, 17

ERISA § 407(a)(2), 29 U.S.C. § 1107(a)(2) .................................................18

ERISA § 407(d)(3), 29 U.S.C. §1107(d)(3) ..........................................16 n.10, 17

22006571v6

Table of Authorities (cont'd)

Page

ERISA § 406, 29 U.S.C. § 1106 ....................................................................................14

ERISA § 409, 29 U.S.C. § 1109 ...............................................................................14 n.8

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).........................................................2, 3, 14 n.8

ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3)......................................................2, 3, 14 n.8, 20

**MISCELLANEOUS**

Joint Committee on Taxation, 107th Cong., Present Law and Background
    Relating to Employer-Sponsored Defined Contribution Plans and Other
    Retirement Arrangements and Proposals Regarding Defined Contribution Plans
    (JCX-11-02, Feb. 26, 2002) ...........................................................................................17

v

## PRELIMINARY STATEMENT

The ERISA Defendants respectfully submit this Omnibus Reply Memorandum of Law in Support of their Motion to Dismiss the Consolidated Amended ERISA Complaints (the "Complaints"). These actions are not only superfluous – the ERISA Plans are all members of the putative class whose allegations in the securities class actions these plaintiffs have borrowed so heavily – they are also legally defective for all of the reasons stated in the Defendants' Omnibus Memorandum of Law in Support of the Motion to Dismiss (hereinafter "Defendants' Mem."). There is ample reason to grant these motions and stop these unnecessary claims from consuming more of the Court's and the parties' time. The ERISA Defendants respectfully submit that, for the reasons set forth below and in their opening memoranda, the ERISA claims should be dismissed.

## ARGUMENT

### I.     The Former Plan Participants Lack Both Constitutional and Statutory Standing.

Many of the plaintiffs in these cases are *former* employees who have received all of the benefits due them under the terms of their respective plans. In their Omnibus Memorandum of Law in Support of the Motion To Dismiss (Defendants' Mem. at 4-11), the ERISA Defendants established that, as a consequence, these former participant plaintiffs lack standing under both Article III and ERISA.

Plaintiffs do not dispute – nor could they – that every ERISA plaintiff must meet *both* the constitutional and statutory standing requirements. *See, e.g., Harley v. Minn. Mining & Mfg. Co.,* 284 F.3d 901, 906-07 (8th Cir. 2002), *cert. denied,* 537 U.S. 1106

(2003).  Remarkably, however, Plaintiffs' Memorandum in Opposition to Defendants'

Omnibus Motion to Dismiss (hereinafter "Plaintiffs' Op.) does not even address – let

alone refute – the identified constitutional defect in the standing of the former participant

plaintiffs, *i.e.,* they are, as a matter of law, not entitled to any relief that would "likely"

redress the injuries they allegedly sustained.  Indeed, Plaintiffs' silence effectively

concedes that former participants cannot establish the redressability element of the

constitutional standing test.  That defect alone is sufficient to mandate dismissal of the

claims of the former participant plaintiffs.  Plaintiffs' arguments that they have standing

under ERISA are equally ineffective.

> **A.     By Their Silence, Plaintiffs Effectively Acknowledge That the
> Available Relief Cannot Redress the Injuries That Former
> Participant Plaintiffs Allegedly Suffered.**

Article III requires that every plaintiff seeking access to federal court must not

only show (1) a concrete and particularized injury-in-fact, (2) which is causally

connected to the complained of conduct of the defendant, but also (3) that the purported

injury will likely be redressed by a favorable decision.  *See Lujan v. Defenders of

Wildlife,* 504 U.S. 555, 560-61 (1992).  In their Omnibus Memorandum, the ERISA

Defendants established that any monetary recovery under ERISA § 502(a)(2) would be

paid to the respective plans and not to the former participant plaintiffs, and that, as former

participants who received full distributions of the assets in their accounts, those plaintiffs

have no claims against their former plans for any additional amounts.  (Defendants'

Mem. at 4-5).  While the relief available under ERISA § 502(a)(3) would run directly to

the former participant plaintiffs, that section does not allow the recovery of money

damages, but only injunctive or equitable relief, which would be of no benefit to those plaintiffs.[1]  (*Id.* at 5-6).

Nowhere in their Omnibus Opposition do Plaintiffs contend that any monetary recovery under ERISA § 502(a)(2) would be paid other than to the respective plans, or that the former participant plaintiffs have any claim against the applicable plans for additional benefits, or that ERISA § 502(a)(3) allows for a damage recovery, or that the injuries alleged would be redressed by the injunctive or equitable relief available under § 502(a)(3).  It is, of course, the burden of every plaintiff to satisfy each of the constitutional elements of standing.  *See Lujan*, 504 U.S. at 561.  Plaintiffs' silence in the face of the ERISA Defendants' showing as to the redressability component speaks loudly and decisively that the former participant plaintiffs lack Article III standing, and that the claims of those plaintiffs must be dismissed on that ground alone.

**B.**     **Former Participant Plaintiffs Also Lack Standing Under ERISA.**

The former participant plaintiffs' claims fail for the independent reason that those plaintiffs also lack ERISA standing.  (Defendants' Mem. at 7-11).  Both sides agree that to have standing under ERISA the various plaintiffs in these cases must qualify as "participants."  A former employee may qualify as a participant, but only if the former employee either has (a) a reasonable expectation of returning to covered employment, or

---

[1]     The ERISA Defendants also pointed out that the alleged injuries of the former participant plaintiffs who executed general releases of their ERISA claims were not redressable for that separate reason. (Defendants' Mem. at 6).  Plaintiffs address the enforceability of those general releases in the various supplemental opposition memoranda they filed.  The ERISA Defendants will answer in their respective supplemental reply briefs, as appropriate.

(b) a colorable claim for a vested benefit. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117 (1989). The plaintiffs do not contend that the former participant plaintiffs meet either of the *Firestone* requirements. Rather, Plaintiffs assert that they fit within the so-called "[but for] exception to the general rule that a person who terminates his right to belong to a plan cannot be a 'participant' in the plan." (Plaintiffs' Op. at 19, *quoting Swinney v. General Motors Corp.,* 46 F.3d 512, 519 (6th Cir. 1995)). Under this exception, "so long as a former employee would have been in a class eligible to become a member of the plan *but for the fiduciary's alleged breach* of duty, he 'may become eligible' for benefits under the plan, and is therefore a 'participant' under § 1002(7) for the purposes of standing." *Swinney,* 46 F.3d at 519 (emphasis added).

That is not the law of the Fourth Circuit, however. The Fourth Circuit has specifically rejected the "but for" exception. *See Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 435 (4th Cir. 1986); *Gardner v. E. I. Dupont De Nemours & Co.,* No. 97-2462, 1998 WL 743669, at *3-4 (4th Cir. Oct. 28, 1998); *Baird v. CSX Transp., Inc.,* 704 F. Supp. 100, 102 (W.D. Va. 1989). As the Fourth Circuit explained in *Stanton,* "[t]he effect of reading in a 'but for' test is to impose participant status on every single employee who *but for* some future contingency may become eligible. Neither caselaw nor other provisions of ERISA supports such a reading of 'participant.'" 792 F.2d at 435. Fourth Circuit law governs this case, *see Bradley v. United States,* 161 F.3d 777, 782 n.2 (4th Cir. 1998) ("[T]his court cannot and does not apply the law of another circuit simply because the case was transferred from the other circuit"), and under Fourth Circuit law the *Swinney* exception does not apply.

4

In any event, the former participant plaintiffs do not even satisfy the "but for" test they espouse. In *Swinney*, the Sixth Circuit explained that the exception to the general rule was quite limited: "[I]f the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach." 46 F.3d at 518. In these cases, the fiduciary breaches alleged are wholly unrelated to the events pertaining to the former plan participants leaving their employment, as well as their concomitant decisions to take a full distribution from their respective 401(k) accounts. Significantly, none of the Complaints assert that "but for" the alleged fiduciary breach the former participant plaintiffs would still be employed, would still be plan participants, or would still have claims to vested benefits. Even if the *Swinney* exception were applicable in this Circuit, it would not confer statutory standing on the former participant plaintiffs.[2]

---

[2] Plaintiffs' reliance on *Rankin v. Rots,* 220 F.R.D. 511 (E.D. Mich. 2004), and the district court's decision in *Kuper v. Quantum Chem. Corp.,* 829 F. Supp. 918, 923 (S.D. Ohio 1993), *aff'd on other grounds Kuper v. Iovenko,* 66 F.3d 1447 (6th Cir. 1995), is similarly unavailing. Neither decision can be reconciled with the Fourth Circuit's rejection of the "but for" exception. Moreover, the district court in *Rankin* found standing for a former participant only by expanding the "but for" exception of *Swinney* beyond its narrow parameters. The *Rankin* court was of the view that such an expansion was necessary because otherwise an employer "by simply paying" potential class members "their vested benefits" could deprive participants of a right to share in any future recovery by the plan and thus obtain a greater vested benefit. 220 F.R.D. at 519-20. There is also little basis for the court's concerns about potential employer abuses. Employers cannot simply pay participants vested benefits and thereby force them out of the plan. Indeed, an employer cannot require even a former employee to take a full disbursement of the assets in his or her 401(k) account, unless the value of the account is $3,500 or less. 29 U.S.C. § 1053(e)(1), *amended by* Pub. L. 105-34 (1997). Finally, the *Rankin* court recognized the constitutional redressability problem inherent in allowing former participants to sue to recover on behalf of the plan, but assumed, incorrectly, that any recovery by the plan would somehow flow to the plaintiff there. 220 F.R.D. at 520.

The *Kuper* court's conclusion that former participants "retain[ed] at least a 'colorable' claim to a 'benefit' of some type under the plan" has been persuasively rejected by more recent cases. *See, e.g., Crosby v. Bowater Inc.,* 382 F.3d 587, 594-97 (6th Cir. 2004). As the Seventh Circuit put it,

5

## II.   Plaintiffs Have Not Adequately Pleaded That Defendants Are ERISA Fiduciaries.

Plaintiffs contend, essentially, that the pleading requirements for an ERISA claim like theirs are so liberal that Plaintiffs can simply "fill in the blank," conclusorily alleging that anyone or any entity "exercised discretionary control" (in the language of the statute) over a particular Plan, without proffering any factual allegations demonstrating such control.  The law in this Circuit is clear, however, that such conclusory allegations are not adequate, under either Rule 8(a) or Rule 9(b) of the Federal Rules of Civil Procedure.

### A.   Plaintiffs' Complaints Fail To Meet Rule 9(b).

Plaintiffs do not even attempt to argue that their Complaints meet the heightened pleading standards of Rule 9(b), conceding that they do not.[3]  Instead, they argue that Rule 9(b) does not apply because the legal theory underlying their claim is not fraud, but breach of fiduciary duty.  Plaintiffs thus urge that despite their wholesale borrowing of allegations of securities fraud from the Class Complaint, because the legal framework of their claim is not a cause of action for fraud, their Complaints are insulated from Rule 9(b).

---

"injustice or not," a plaintiff who received a full distribution of the benefits due under the terms of a plan, has no basis to complain about a breach of fiduciary duty.  *See Brengethsy v. LTV Steel (Republic) Hourly Pension Plan,* 241 F.3d 609, 612 (7th Cir. 2001).

[3]   Indeed, Plaintiffs could not credibly assert that their Complaints – a pastiche of borrowed allegations and conclusory quotes from the statute – meet Rule 9(b)'s mandate that they identify with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1297 at 590 (2d ed. 1990)).

6

By its terms, however, Rule 9(b) applies to all "averments" of fraud. Fed. R. Civ. P. 9(b). As the Second Circuit has explained, "[t]his wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Thus, "while a plaintiff need allege no more than negligence to proceed under Section 11 and Section 12(a)(2), claims that do rely upon averments of fraud are subject to the test of Rule 9(b)." *Id.* This is equally true in causes of action brought under ERISA. While fraud is not a necessary element of every ERISA claim, to the extent an ERISA claim is predicated on allegedly fraudulent conduct, Rule 9(b) applies. *See, e.g., Adamczyk v. Lever Bros. Co.*, 991 F. Supp. 931, 939 (N.D. Ill. 1997) (holding that Rule 9(b) applies to ERISA claims that allege misrepresentation or deception) (cited in Plaintiffs' Op. at 14).

Here, the gravamen of Plaintiffs' Complaints is that the defendants violated ERISA by allowing the Plans to invest in mutual funds, or in the stock of certain mutual fund advisors, where undisclosed, fraudulent market timing activity was allegedly taking place. But for the alleged concealment of fraudulent activity, Plaintiffs would have no argument that these investments violated ERISA. *See, e.g.*, Amvescap Complaint at ¶ 60 ("Had the defendants not breached their fiduciary and/or co-fiduciary duties by . . . failing to disclose their true practices and procedures to plaintiff and the Class, the Plans would have avoided a substantial portion of the loss suffered."). Indeed, Plaintiffs' characterization of their own allegations in their brief underscores that allegedly fraudulent conduct is at the core of their allegations; Plaintiffs assert that "defendants

7

either sanctioned or failed to prohibit _secret_ arrangements, _deceptive_ trading practices . . . to exploit market timing and late trading opportunities . . . and then _concealed_ those activities from the Plan participants." (Plaintiffs' Op. at 1 (emphasis added)).  Rule 9(b) clearly applies to such averments.[4]

### B.   Plaintiffs' Complaints Fail To Meet Rule 8(a).

Moreover, Plaintiffs' Complaints are deficient even when measured against the minimum standards imposed by Rule 8(a) of the Federal Rules of Civil Procedure.  The Court of Appeals for the Fourth Circuit has held that under Rule 8(a) "more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." _Migdal v. Row Price-Fleming Int'l, Inc._, 248 F.3d 321, 326 (4th Cir. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 318 (2d ed. 1990)).

The Fourth Circuit has expressly cautioned that _Swierkiewicz_ – a case upon which Plaintiffs want to rely – should not be interpreted "as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." _Bass v. E.I. Dupont De Nemours & Co._, 324 F.3d 761, 765 (4th Cir. 2003) (citing _Dickson v. Microsoft Corp._, 309 F.3d 193, 213 (4th Cir. 2002)); _see also Dura Pharms., Inc. v. Broudo_, 125 S. Ct.

---

[4]   Plaintiffs offer an alternative, entirely counterintuitive argument: they argue that even if some of their claims rely on allegations of fraud, not all of them do, so Rule 9(b) should not apply to any of their allegations.  Even if the Court were to find, however, that some averments were not subject to Rule 9(b), Rule 9(b) would still apply to those allegations that sound in fraud. _See, e.g., Adamczyk,_ 991 F. Supp. at 939-40 (dismissing all of plaintiffs' claims which were based on intentional or knowing misrepresentation because they did not satisfy Rule 9(b)) (cited in Plaintiffs' Op. at 14); _see also Vess v. Ciba-Geigy Corp. USA,_ 317 F.3d 1097, 1104 (9th Cir. 2003) (holding that in cases where a plaintiff alleges some fraudulent and some non-fraudulent conduct, the allegations sounding in fraud are subject to Rule 9(b)'s heightened pleading requirements).

1627, 1634 (2005) (cited in Plaintiffs' Op. at 9) (dismissing complaint on ground that imposing at least some burden on plaintiffs to allege a bare minimum of facts in support of their claim is necessary to avoid abusive practices). Here, Plaintiffs must plead (and of course ultimately prove) facts sufficient to demonstrate that an <u>ERISA fiduciary</u> has breached a duty imposed <u>by ERISA</u>. Because they have failed to plead facts to show that each defendant was acting as an ERISA fiduciary at the time of the challenged conduct, Plaintiffs' claims must be dismissed.[5]

### C.    Plaintiffs Have Failed to Allege Facts That Would Demonstrate That Defendants Are Plan Fiduciaries.

Plaintiffs' Opposition expends a great deal of space urging the Court to adopt a broad definition of "fiduciary" under ERISA. (Plaintiffs' Op. at 21-23). But the broadest definition in the world does not excuse Plaintiffs' failure to allege facts that, if true, would show that each defendant they seek to hold liable under ERISA is a fiduciary. Despite Plaintiffs' promise that "[a] review of the allegations against each defendant . . . is contained in the supplemental memoranda" (Plaintiffs' Op. at 27), the supplemental memoranda merely recite – more or less verbatim – the same insufficient allegations contained in the Complaints and do not include any legal argument. Similarly, Plaintiffs' assertion that "the ERISA complaints contained detailed allegations that defendants were

---

[5]    None of the cases cited by Plaintiffs compels a contrary result. Both *Howell v. Motorola, Inc.*, 337 F. Supp.2d 1079 (N.D. Ill. 2004) and *In re Worldcom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) actually dismissed the plaintiffs' complaints against the majority of the defendants. The court in *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp.2d 658, 665-66 (E.D. Tex. 2004) found that plaintiffs had alleged facts in support of their claim that defendants were named fiduciaries.

9

both named and de facto fiduciaries" (Plaintiffs' Op. at 37) is simply not borne out by an examination of the Complaints themselves.

Regardless of how liberally the term "fiduciary" is interpreted, Plaintiffs' conclusory allegations that Defendants "exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets," do no more than track the language of the ERISA statute and must be dismissed. Plaintiffs' attempt to distinguish the governing Fourth Circuit precedent, *Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996), is unavailing. In *Custer*, the court held that plaintiffs' allegation that the defendant, as attorney to the Plan, controlled information pertaining to the mismanagement of Plan assets was not sufficient to qualify the defendant as a fiduciary. *Id.* at 1163.

Plaintiffs cannot avoid dismissal simply by claiming that ERISA claims are fact intensive and case specific; while discovery may be necessary to determine the *scope* of a fiduciary's discretionary authority, as addressed in the cases cited in Plaintiffs' Opposition, such inquiry is permissible only after Plaintiffs have adequately pled facts to show that each defendant functioned as an ERISA fiduciary in the first instance. The cases Plaintiffs cite are readily distinguishable, because each opinion quotes specific factual allegations that, if true, would establish that the defendants were fiduciaries with respect to the plans at issue.[6] The Complaints at issue here are devoid of any similar

---

[6]     *See, e.g., Rankin v. Rots,* 278 F. Supp.2d 853, 879 (E.D. Mich. 2003) (" [T]he Plan Documents imbue[d] all of the defendants with some degree of authority over the Plan"); *In re Ikon Office Solutions, Inc. Sec. Litig.,* 86 F. Supp.2d 481, 491 n.15 (E.D. Pa. 2000) (noting that plaintiffs allege that Ikon affirmatively involved itself by providing information about the plan to participants); *Beam*

10

allegations. The Fourth Circuit has affirmed the dismissal of similarly deficient

complaints for failure to allege fiduciary status, prior to the conducting of discovery. *See,*

*e.g., Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61-62 (4th Cir. 1992).

> **D.   Plaintiffs Characterize Defendants as "De Facto" Fiduciaries Without Alleging Facts to Show Defendants Performed Any Fiduciary Function.**

Plaintiffs concede that most defendants are not expressly identified as fiduciaries

in the Plan documents and characterize these defendants as "de facto" fiduciaries under

ERISA. Defendants do not disagree that a person can act as a fiduciary by exercising

discretionary authority with respect to the plan. However, Plaintiffs fail to allege a single

fact that, if true, would demonstrate that any defendant here actually exercised such

discretionary authority. Instead, the scant particulars offered by Plaintiffs describe the

relevant defendants as performing roles that the courts have repeatedly concluded do not

confer fiduciary status under ERISA. Plaintiffs have alleged that certain defendants are

(a) Plan sponsors, (b) officers/directors of the mutual fund advisors, or (c) signatories to

SEC filings, but such allegations simply do not demonstrate that those defendants

functioned as fiduciaries. (Defendants' Mem. at 16, 18-20).

First, Plaintiffs have failed to come forward with factual allegations that the Plan

sponsors, or those acting on behalf of sponsors, or the "participating employers" who

---

*v. HSBC Bank USA,* No. 02-CV-0682E(F), 2003 WL 22087589, at *3 (W.D.N.Y. Aug. 19, 2003) (finding outside directors were fiduciaries because they authorized the disposition of Plan assets and had fiduciary duties with respect to the appointment, monitoring and removal of the trustee and the named fiduciary); *In re CMS Energy ERISA Litig.,* 312 F. Supp.2d 904, 909 (E.D. Mich. 2004) (plaintiffs allege inside directors of the "Employers" are fiduciaries because Plan conferred "Employers" with broad administrative and management responsibility).

sponsored ERISA plans, exercised discretionary authority or control with regard to Plan management, administration or assets. Plaintiffs' "presumption" that the sponsors (every one of them) disseminated Summary Plan Descriptions to Plan participants is no substitute for a well-pleaded allegation.

Plaintiffs' argument that some individual defendants are fiduciaries by virtue of signing SEC filings similarly misses the mark. The mere fact that a director signed a regulatory filing is not enough to transform him into an ERISA fiduciary. *See In re Sprint Corp. ERISA Litig.*, No. 03-2202-JWL, 2004 WL 1179371, at *14 (D. Kan. May 27, 2004) ("those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts") (citing *In re Worldcom, Inc. ERISA Litig.*, 263 F. Supp.2d 745, 766 (S.D.N.Y. 2003)). The string of cases cited by Plaintiffs stands for the basic principle that ERISA fiduciaries can violate their duties by disseminating false information to plan participants, but offers no support for the contention that merely signing an SEC filing – even an allegedly false one – makes a defendant a fiduciary with respect to an ERISA plan.

Similarly, the courts have regularly held that occupying a position as a corporate officer or director does not confer fiduciary status. *See Arevalo v. Herman*, No. 3:01CV512, 2002 U.S. Dist. LEXIS 7076, at *12 (E.D. Va. Apr. 12, 2002) (status as corporate officer does not impute involvement with plan implementation or operation), *aff'd*, No.02-1513, 128 Fed. App. 952, 2005 U.S. App. LEXIS 6683 (4th Cir. Apr. 19, 2005). Plaintiffs' citations to cases in which the officers and directors have the power to appoint and remove other plan fiduciaries are inapposite, since such factual allegations

12

are nowhere to be found in the Complaints, and the Plan Documents do not confer any such power on the officer and director defendants at issue here.  Even if the officer and director defendants were responsible for omissions in public filings or encouraged participants to invest in market timed or late traded mutual funds (Defendants' Mem. at 37), there are no allegations that these defendants were acting as fiduciaries when they took these alleged actions.

Plaintiffs have not even attempted to respond to Defendants' arguments that other roles the Defendants are alleged to have had with respect to the Plans (investment managers of the underlying mutual funds, employers, or parent corporations) do not transform the Defendants into fiduciaries.  (Defendants Mem. at 17-18, 20-21).  Nor do Plaintiffs dispute that directed trustees have quite limited fiduciary duties, triggered only when a trustee "knows or should know of reliable public information that calls into serious question the company's short-term viability as a going concern."  *In re Worldcom, Inc. ERISA Litig.*, 354 F. Supp.2d 423, 449 (S.D.N.Y. 2005).  Because Plaintiffs have failed to allege facts demonstrating that each defendant was a fiduciary under ERISA, their claims must be dismissed.

### III.   The Complaints Fail To State Claims For Co-Fiduciary Liability.

Because Plaintiffs have failed to allege facts establishing a primary breach of fiduciary duty, their claims of breach of co-fiduciary duty necessarily fail as well.  *See, e.g., Maniace* v. *Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 268 (8th Cir. 1994); *cert. denied*, 514 U.S. 1111 (1995) (plaintiff must establish primary breach of fiduciary duty to maintain a claim under § 405); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d

13

1090, 1103 (9th Cir. 2004) (same).  Accordingly, Plaintiffs' claims under § 405 must be dismissed.[7]

Having failed to establish that any Defendant is liable based on a co-fiduciary theory, Plaintiffs assert, for the first time in their opposition papers, the argument that certain unspecified Defendants may be held liable as third-party non-fiduciaries. (Plaintiffs' Op. at 34-35).  This court need not consider this new claim, as it does not appear anywhere in Plaintiffs' Complaints.  *See, e.g., Freilich v. Bd. of Directors of Upper Chesapeake Health, Inc.*, 142 F. Supp.2d 679, 691 n.7 (D. Md. 2001) (court will not consider new claim raised in response to motion to dismiss in absence of amended complaint), *aff'd*, 313 F.3d 205 (4th Cir. 2002).[8]

## IV.   The Prohibited Transactions Claims Must Be Dismissed.

The ERISA Complaints alleged that Defendants had committed prohibited transactions in violation of § 406 of ERISA, 29 U.S.C. § 1106, as a result of the plans' purchases of mutual fund shares and, in some cases, in acquisitions of employer stock.

---

[7]   Plaintiffs' Opposition asserts several conclusions of law that are not tethered to any allegations of fact.  Plaintiffs note that "a co-fiduciary can be liable for the acts of another co-fiduciary over which the first has no control and/or duty to monitor, so long as the first co-fiduciary, with knowledge of the second's breach, omitted to act to protect the interests of the beneficiaries" (Plaintiffs' Op. at 31), but cannot point to any allegations supporting this theory of liability in the Complaints.  Plaintiffs also argue that fiduciaries have a "duty to monitor the performance of [their] appointees" (*id.* at 32), but once again do not identify any portion of their Complaints that alleges facts to support that legal theory.

[8]   Moreover, Plaintiffs are simply wrong.  Although non-fiduciaries have been held liable for equitable relief under ERISA 502(a)(3) on very limited occasions, they have not been held liable for money damages under ERISA 502(a)(2) and 409.  As explained by the court in *Fremont v. McGraw-Edison Co.,* 606 F.2d 752, 759 (7th Cir. 1979), even though a third party may participate in and benefit from a fiduciary's wrong-doing, the third party would nonetheless have no liability under ERISA 502(a)(2) because ERISA's statutory duties were not imposed upon the third party.

At pages 23-29 of their Omnibus Memorandum, Defendants explained why these claims should be dismissed. Plaintiffs' Opposition simply fails to address these claims or defenses and does not even refer to § 406.  Accordingly, for the reasons stated in Defendants' Omnibus Memorandum, these claims, having been abandoned by Plaintiffs, should be dismissed.

**V.    Plaintiffs Have Failed To Allege Circumstances Sufficient to Overcome the *Moench/Kuper* Presumption That Investment in Company Stock is Prudent.**

The ERISA Defendants' Omnibus Memorandum demonstrated that Plaintiffs had failed to state a claim that any fiduciary duty of prudence had been breached by continuing to offer company stock as an investment option in their respective 401(k) plans.  In that regard, the ERISA Defendants established that all of the 401(k) plans in question are "eligible individual account plans" (EIAPs), which are exempt from ERISA's diversification requirements with regard to investment in company stock, and that the Plaintiffs had failed to overcome the consequential *Moench/Kuper* presumption that a plan fiduciary does not breach any duty of prudence by continuing to allow participants in such plans to invest in company stock absent circumstances indicating knowledge by the plan fiduciary that there were serious questions regarding the viability of the company as an ongoing enterprise.  (Defendants' Mem. at 29-33).

In response, Plaintiffs argue that the *Moench/Kuper* presumption only applies to one kind of EIAP, an ESOP,[9] but not to others, such as 401(k) plans, and that, in any

---

[9]    Plaintiffs concede that the *Moench/Kuper* presumption of prudence applies to ESOPs.  For those Complaints that concern ESOPs, therefore, prudence is presumed.

15

event, a plaintiff can overcome the *Moench/Kuper* presumption at the pleading stage by merely alleging that a prudent fiduciary would have removed company stock from the plan. (Plaintiffs' Op. at 39-46). Plaintiffs are badly mistaken on both points.

A.    The *Moench/Kuper* Presumption Is Applicable To 401(k) Plans.

Plaintiffs acknowledge that the Third Circuit in *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir. 1995), and the Sixth Circuit in *Kuper v. Iovenko,* 66 F.3d 1447, 1459 (6th Cir. 1995), held that the decision of a fiduciary to remain invested in company stock is entitled to a presumption of reasonableness and is to be reviewed only for abuse of discretion. (Plaintiffs' Op. at 39-41). Although in both cases the basis for the presumption was the exception from the diversification requirements otherwise applicable to plan investments in company stock, *Moench,* 62 F.3d at 569-70; *Kuper,* 66 F.3d at 1458, which is equally available to 401(k) plans and ESOPs, Plaintiffs unsuccessfully labor to draw distinctions between those two types of EIAPs that would justify applying the presumption to ESOPs, while denying the presumption to 401(k) plans.[10]

Plaintiffs' initial thrust is that the *Moench/Kuper* presumption is the result of an effort to harmonize Congress' encouragement of ESOPs with the competing legislative interest in safeguarding the interests of participants in pension plans through diversified

---

[10]    Plaintiffs argue that the text of ERISA distinguishes in some material way between ESOPs and a 401(k) savings plan. (Plaintiffs' Op. at 41). But all that Plaintiffs' parsing of the statutory language shows is that ERISA expressly describes the type of EIAP that qualifies as an ESOP. What is relevant—and what Plaintiffs conveniently ignore—is that the text of ERISA draws no distinction between ESOPs and 401(k) plans with respect to the diversification exception. *See* 29 U.S.C. §§ 1104(a)(2), 1107(d)(3).

16

investments of assets. (Plaintiffs' Op. at 39-41). But Congress' favored view of ESOPs is only one manifestation of a strong legislative preference for investment in company stock by all forms of EIAPs, including 401(k) plans. *See Foltz v. U.S. News & World Report, Inc.*, 865 F.2d 364, 373-74 (D.C. Cir. 1989); *see also* Joint Committee on Taxation, 107th Cong., Present Law and Background Relating to Employer-Sponsored Defined Contribution Plans and Other Retirement Arrangements and Proposals Regarding Defined Contribution Plans, at 40 (JCX-11-02, Feb. 26, 2002). ESOPs just happened to be the EIAP at issue in *Moench/Kuper*. Subsequent cases have held that the *Moench/Kuper* presumption of prudence applies equally to all EIAPs. *See Wright,* 360 F.3d at 1097-98 & n.3; *In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 WL 1431506, at *5 (N.D. Cal. Mar. 31, 2005) (same); *Steinman v. Hicks*, 252 F. Supp.2d 746, 757-59 (C.D. Ill. 2003) (same). Plaintiffs have cited no authority to the contrary.

Plaintiffs next advance the erroneous proposition that ESOPs and 401(k) plans are materially different for the purposes of the *Moench/Kuper* presumption because a 401(k) plan is a "typical diversified ERISA plan," while ESOPs invest almost exclusively in company stock. (Plaintiffs' Op. at 42-43). What Plaintiffs conveniently ignore is that the statutory exemption from diversification means that 401(k) plans can be heavily concentrated, if not wholly invested, in company stock without violating ERISA's prudence provisions. *See* 29 U.S.C. §§ 1104(a)(2), 1107(d)(3). Thus, the references to "typical diversified ERISA plan[s]" in *Moench,* 62 F.3d at 568, and in *Kuper,* 66 F.3d at 1457, are not to 401(k) plans, but to those retirement plans, such as defined benefit plans, in which diversification is statutorily required and where there are percentage limits on

17

how much may be invested in company stock.  *See* 29 U.S.C. § 1107(a)(2) (company

stock may not comprise more than ten percent of the value of the assets of a non-EIAP

pension plan).

**B.      Plaintiffs' Allegations Fall Far Short Of Overcoming The**
**         *Moench/Kuper* Presumption.**

As the ERISA Defendants explained, to rebut the *Moench/Kuper* presumption, the

Plaintiffs must demonstrate that the fiduciaries of the respective plans knew or should

have known that the sponsoring company was on the precipice of a catastrophic financial

failure calling into serious question the viability of the company as an ongoing enterprise,

or were aware of matters of an equally serious nature that would undermine the continued

prudence of offering company stock as an investment option.  (Defendants' Mem. at 30-

31).

The Plaintiffs have not alleged – nor could they – that any plan fiduciaries of any

of the plans knew or should have known that their respective companies were on the

verge of imminent collapse, or that there were other equally serious matters involving the

company.  Instead, Plaintiffs offer a series of make-weight arguments that, if accepted,

would make the *Moench/Kuper* presumption meaningless.

Citing *Kuper,* Plaintiffs argue that the presumption does not apply at the pleading

stage.  (Plaintiffs' Op. at 44-45).  However, as *Kuper* came to the court of appeals only

after trial, the Sixth Circuit in *Kuper* had no occasion to address whether the plaintiff

there needed to plead facts in the complaint sufficient to overcome the presumption.  66

F.3d at 1449-50.  Moreover, contrary to what Plaintiffs assert, the *Moench/Kuper*

presumption is not an evidentiary rule. Rather, the presumption fixes a standard of fiduciary conduct that plaintiffs must show has been violated in order to establish that a plan fiduciary is liable for allowing company stock to remain an investment option. It is thus an element of the Plaintiffs' cause of action that they must both plead and prove. *See Wright,* 360 F.3d at 1097-98 (applying *Moench* presumption at motion to dismiss stage); *Calpine,* 2005 WL 1431506, at *4-6 (same); *In re Duke Energy ERISA Litig.,* 281 F. Supp.2d 786, 794-95 (W.D.N.C. 2003) (same).

Plaintiffs also assert that the *Moench/Kuper* presumption can be overcome by generalized allegations that a prudent fiduciary would have acted differently in the circumstances. The prevailing understanding of how the *Moench/Kuper* presumption operates at the pleading stage is well-described in *Calpine.* In that case, the plaintiffs alleged (much like the plaintiffs here) that that defendants breached their duty to prudently and loyally manage plan assets by failing to "deselect" the company stock fund as an investment option in the company's 401(k) plan. *Calpine,* 2005 WL 1431506, at *4-6. The court held that the *Moench/Kuper* presumption applied, *id* at *5, and that to rebut the presumption of prudence, "a complaint must plead facts that, if proven, would demonstrate that the fiduciaries knew that the 'company's financial condition is seriously deteriorating and that there is a genuine risk of insider self-dealing.'" *Id.* (quoting *Wright,* 360 F.3d at 1098); *see also In re Duke Energy ERISA Litig.,* 281 F. Supp.2d at 795. Applying that standard, the court in *Calpine* granted defendants' motion to dismiss, because the company there — just like the companies in these cases — "was a viable concern throughout the alleged class period and was not in the sort of deteriorating

19

financial circumstances that must be pled to rebut the presumption of prudence." 2005

WL 1431506, at *5.[11]

**VI.   Plaintiffs' Misrepresentation Claims Should Be Dismissed.**

Plaintiffs' misrepresentation and nondisclosure claims should be dismissed on

numerous grounds set forth in Defendants' Omnibus Memorandum. (Defendants' Mem.

at 33-40).  Unable to respond meaningfully to those grounds, Plaintiffs have instead

chosen largely to ignore them.  Not only does their Opposition omit any section

specifically addressing these claims, but Plaintiffs have failed to provide *any* response

whatsoever to many of Defendants' arguments, including that:

- Plaintiffs' claims should be dismissed for failure to adequately plead the required element of detrimental reliance. *See Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 95-97 (D. Md. 2004).

- The relief available on these claims is necessarily individualized, *see Tootle,* 222 F.R.D. at 96-97, and therefore can be sought only under ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), s*ee, e.g., Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 385 n.7 (4th Cir. 2001), and therefore does not extend to the type of monetary damages sought by Plaintiffs. *Rego v. Westvaco Corp.,* 319 F.3d 140, 145 (4th Cir. 2003).

---

[11]   Plaintiffs' reliance on *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004), and *In re CMS Energy ERISA Litig.*, 312 F. Supp.2d 898, 908 (E.D. Mich. 2004), for the contrary proposition is not well founded.  To overcome the presumption of prudence in *Sears*, the plaintiffs had apparently alleged facts showing that the plan fiduciaries knew or should have known that Sears's price of stock was fraudulently inflated. *Sears*, 2004 WL 407007, at *4.  No such factual allegations have been made in this case.

In *CMS*, the court did not even discuss the *Kuper/Moench* presumption of prudence, except to note its agreement that it could be overcome by "showing that a prudent fiduciary would have made a different investment decision."  312 F. Supp.2d at 914 n.10.  The court never addressed what that showing needed to be.  And to the extent the court in *CMS* rejected consideration of the presumption of prudence at the motion to dismiss stage, the decision is contrary to nearly every other court that has considered application of the presumption. *See Calpine,* 2005 WL 1431506, at *5 and cases cited therein.

Even where Plaintiffs have responded to Defendants' arguments, those attempts widely miss the mark.  As explained at pages 34-35 of Defendants' Omnibus Memorandum, Plaintiffs' misrepresentation claims fail because the alleged misrepresentations, statements about the financial prospects of the employers or the mutual funds at issue, fall outside the scope of ERISA fiduciary speech.  Plaintiffs cite a string of cases in which courts have allowed ERISA plaintiffs to base fiduciary duty claims on misrepresentations in SEC filings that had allegedly been incorporated by reference into plan documents.  (Plaintiffs' Op. at 29-30).  However, Plaintiffs' Complaints do not allege that any SEC filings here were incorporated into plan documents.  Moreover, while Plaintiffs generically allege that Defendants made misrepresentations to participants, the Complaints do not allege that those communications included SEC filings.[12]  Thus, the Complaints here lack the key allegations which were critical to the ability of plaintiffs to assert ERISA claims in those other cases.  As such, those cases only underscore the insufficiency of Plaintiffs' misrepresentation claims.

Moreover, Plaintiffs simply ignore the holding of *Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 654-58 (4th Cir. 1996) that ERISA does not, as Plaintiffs contend, mandate disclosure of financial information or investment advice.  Instead, Plaintiffs cite the Fourth Circuit's opinion in *Griggs,* for the proposition that fiduciaries can, at times, have

---

[12]  The Complaints in some instances refer to statements in SEC filings or the signing of SEC filings by certain Defendants as evidence of fiduciary status or for the purpose of describing the plans. However, the Complaints do not allege that those SEC filings were incorporated into plan documents or that they were otherwise used to communicate with plan participants.

21

an affirmative obligation to disclose information. (Plaintiffs' Op. at 31). In *Griggs*, the

defendant incorrectly informed plan participants that they could roll over their plan

benefits tax-free and then failed to correct that misinformation despite the obvious fact

that it would cause participants to incur an otherwise avoidable tax liability. 237 F.3d at

381. Under those unique circumstances, the Fourth Circuit held that a fiduciary had a

duty to correct its own affirmative misrepresentations. *Id.* at 381-82. In so holding,

however, the Fourth Circuit repeatedly stressed that such a duty to disclose information

existed only in "limited circumstances," *id.* at 380-81, and did not suggest that its narrow

ruling could be extended to require employers to share with participants the type of

detailed information about company finances and operations that Plaintiffs contend

should have been provided.

### VII.   Plaintiffs Cannot Save Their "Duty to Monitor" Claim.

Plaintiffs acknowledge that not every ERISA fiduciary has a duty to monitor other

fiduciaries. (Plaintiffs' Op. at 32; Defendants' Mem. at 42). Plaintiffs' duty to monitor

claims must be dismissed because Plaintiffs have never alleged that Defendants

possessed and exercised the power to appoint, retain, or remove other fiduciaries, which

even under the law cited by Plaintiffs is the level of control necessary to trigger a duty to

monitor. *See, e.g., In re AEP ERISA Litig.*, 327 F. Supp.2d 812, 832 (S.D. Ohio 2004)

(duty to monitor imposed on "fiduciaries *when* they appoint other persons to make

decisions about the plan") (emphasis supplied) (cited in Plaintiffs' Op. at 32-33). The

absence of such allegations is fatal to Plaintiffs' "wholly conclusory" duty to monitor

claims under the several cases that they do not even attempt to distinguish in the

Opposition. *Cf., e.g., In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp.2d 861, 903-04 (S.D. Tex. 2004); *In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030RMW, 2002 WL 31431588, at *15-16 (N.D. Cal. Sep. 30, 2002).[13]

Plaintiffs further depart from existing case law by arguing that Defendants' duty to monitor is implicit because they are "plan sponsors" who "reserve[d] the right to amend" the ERISA plans. (Plaintiffs' Op. at 32). That legal conclusion is not supported by a pleaded basis that Defendants did, in fact, have the right to amend. Nor would such factual allegations make a difference because Plaintiffs have not identified any language in the statute to support their proposition that a plan sponsor's ability to amend automatically gives rise to a duty to monitor.

Plaintiffs' attempt to impose a fiduciary duty to monitor on any ERISA plan sponsor that retained a right to amend (which presumably could be said of any sponsor) also finds no support in *Coyne & Delany Co. v. Selman,* 98 F.3d 1457 (4th Cir. 1996). There, the Court of Appeals held that a plan sponsor had standing to bring claims under ERISA – *i.e.,* to sue as a plaintiff – under circumstances where the sponsor not only had the right to amend the plan, but actively monitored other fiduciaries. 98 F.3d at 1466 (plan sponsor deemed fiduciary only "to the limited extent it exercised its discretionary responsibility 'to monitor appropriately' and remove the Plan Administrator and Plan

---

[13] Instead of pleading a viable duty to monitor claim, Plaintiffs *admit* that even now- more than a year after filing the Complaints – they are still looking for a basis to have sued Defendants for this reason. *See* Plaintiffs' Op. at 30 (contending it is "[u]nknowable at this stage" whether "defendants might be liable" for failure to monitor or under other third-party theories).

23

Supervisor.").[14]  The Court, however, took pains to "reemphasize" that the scope of the

fiduciary duty is circumscribed by the scope of the fiduciary's conduct.  *Id.* at 1466 n.10

("party is a fiduciary only as to the activities which bring the person within the

definition") (quotations and citation omitted).  Simply put, even if Defendants retained

some residual authority to amend the ERISA plans, as a matter of law Plaintiffs cannot

state a claim under the Fourth Circuit's "restrictive view" of the duty to monitor because

they never alleged that Defendants had the power to appoint, retain, or remove other

fiduciaries, much less that Defendants actually exercised that never-alleged authority in a

manner that crossed the line from its status as settlor to that of a fiduciary with a duty to

monitor.  *See Coyne,* 98 F.3d at 1473 (Williams, J., concurring) ("employer who does not

exercise its discretionary responsibility to monitor appointees does not have standing [as

a fiduciary] and has not exposed itself to open-ended liability").[15]

---

[14]  Plaintiffs' selective reading of *Coyne* also is foreclosed by cases from other jurisdictions.  *See, e.g., Chicago Bd. Options Exch., Inc.  v. Connecticut Gen. Life Ins. Co.,* 713 F.2d 254, 259 (7th Cir. 1983) (observing power to amend plan could render plan sponsor or insurer a fiduciary, but that such "status only governs actions taken in regard to amending the contract and does not impose fiduciary obligations . . . when taking other actions"); *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Sec., Inc.,* 964 F. Supp. 147, 151-52 (S.D.N.Y. 1997) (finding fiduciary status not implicated where securities company retained power to alter contract, but did not exercise power in manner that disadvantaged plan).

More recently, the United States District Court for the Southern District of Texas in *In re Enron Corp. Securities, Derivative & "ERISA" Litigation* observed that *Coyne* addressed circumstances where, as the Fourth Circuit noted in the opinion, a fiduciary exercises its discretion to monitor other fiduciaries and thereby assumes a fiduciary duty to do so.  *See* 284 F. Supp.2d 511, 553 n.58 (S.D. Tex. 2003) (recognizing "as an exception to the rule that plan sponsors are usually free to amend plans without triggering fiduciary status a situation where the sponsor amends to obtain and exercise the power to appoint, retain and remove plan fiduciaries").

[15]  Plaintiffs also cannot avoid dismissal by relying on *Griggs,* 237 F.3d 371, which *did not even address* the duty to monitor.  The dispositive question in *Griggs* concerned the scope of ERISA preemption (and, in particular, whether it extinguished a state law negligent misrepresentation claim).  *See*

## CONCLUSION

For all of the reasons set forth herein, as well as the reasons set forth in

Defendants' Omnibus Memorandum of Law and the supplemental memoranda filed by

each defendant, the Complaints should be dismissed.

Dated:
August 19, 2005          Respectfully Submitted,


DEBEVOISE & PLIMPTON LLP


_____/s/_____

Maura K. Monaghan
Maeve O'Connor
Robert N. Schwartz
919 Third Avenue
New York, NY 10022
Tel:   (212) 909-6000
Fax:   (212) 909-6836

*Attorneys for AVZ, Inc., Amvescap Retirement, Inc., Amvescap
National Trust Company, Invesco Funds Group, Inc., Amvescap
PLC*

The original of this document contains the actual signature of
Maura K. Monaghan and it will be maintained in our files as
prescribed by the CM/ECF rules.

---

*Griggs*, 237 F.3d at 377.  Plaintiffs certainly cannot analogize their claims to those remanded in
*Griggs* because in that case the defendant conceded that its allegedly improper conduct was
undertaken in its capacity as an ERISA fiduciary.  *Id.*

25

CLIFFORD CHANCE US LLP

_____/s/_____
Mark A. Kirsch
Mark Holland
Mary K. Dulka
Anthony M. Candido
Margaret M. Snyder
31 West 52nd Street
New York, New York  10019
Tel:   (212) 878-8000

*Attorneys for Defendants Alliance Capital Management
Corporation, Alliance Capital Management Holding L.P., and
Alliance Capital Management L.P.*

DEWEY BALLANTINE LLP

_____/s/_____
Robert C. Myers
1301 Avenue of the Americas
New York, New York  10019

*Attorneys for the Board of Directors
of Janus Capital Group Inc.*

26

GIBSON, DUNN & CRUTCHER LLP

_____/s/_____

Mark A. Perry
Paul Blankenstein
Dustin K. Palmer
1050 Connecticut Avenue N.W.
Washington, D.C.  20036
Tel:   (202) 955-8500
Fax:   (202) 467-0539

*Attorneys for Janus Capital Group Inc.
and the Plan Advisory Committee*


GONZALEZ, SAGGIO & HARLAN, L.L.P.


_____/s/_____

Stephen L. Knowles
225 East Michigan, Fourth Floor
Milwaukee, Wisconsin  53202
Tel:   (414) 277-8500
Fax:   (414) 277-8521


SULLIVAN & CROMWELL LLP
Bruce E. Clark
William L. Farris
125 Broad Street
New York, New York 10004
Tel:   (212) 558-4000
Fax:   (212) 558-3588


*Attorneys for Defendant Strong Capital Management, Inc.*

27

ARKIN KAPLAN LLP

_____/s/_____

Howard J. Kaplan
590 Madison Avenue
New York, New York 10022
Tel:   (212) 333-0200
Fax:   (212) 333-2350

*Attorneys for Defendant Richard S. Strong*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

_____/s/_____
Marc E. Kasowitz
Daniel J. Fetterman
John C. Canoni
1633 Broadway
New York, New York  10019
Tel:   (212) 506-1700

*Attorneys for Defendant Raymond R. Cunningham*

28

MORRISON & FOERSTER LLP

_____/s/_____

Daryl P. Rains
755 Page Mill Road
Palo Alto, California  94304

*Attorneys for Charles Schwab Trust Company.*

MUNGER, TOLLES & OLSON LLP

_____/s/_____

Brad Brian
David Dinielli
Kate Anderson
Özge Guzelsu
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071
Tel:   (213) 683-9100
Fax:   (213) 687-3702

*Attorneys for AXA Financial, Inc.*

O'MELVENY & MYERS LLP

_____/s/_____

Robert N. Eccles
Gary S. Tell
1625 Eye Street, NW
Washington, D.C.  20006-4001
Tel: (202) 383-5300

Matthew P. Eastus
400 South Hope Street
Tel:   Los Angeles, CA  90071-2899
Tel:   (213) 430-6000

29

*Attorneys for Defendants Marsh & McLennan Companies, Inc.,*
*Marsh & McLennan Companies, Inc. Stock Investment Plan*
*Committee, Putnam Investments Trust, Putnam Investments, LLC,*
*J.W. Greenberg, Sandra S. Wijnberg, Sandra Wright, William L.*
*Rosoff, and Francis N. Bonsignore*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

_____/s/_____

Daniel J. Kramer
Liza M. Velazquez
Andrea J. Prasow
1285 Avenue of the Americas
New York, NY  10019-6064
Tel:   (212) 373-3000
Fax:   (212) 757-3990

*Attorneys for Bank One Corporation, Bank One Trust Company,*
*N.A., James Dimon and Donald A. Hoy*

30

22006571v6

WILMER CUTLER PICKERING
HALE AND DORR LLP

_____/s/_____
William H. Paine, Esq.
Jonathan A. Shapiro, Esq.
Edward E. Hale, Jr., Esq.
60 State Street
Boston, MA  02109
Tel:   (617) 526-6000
Fax:   (617) 526-5000

*Attorneys for Massachusetts Financial Services Company,
Massachusetts Financial Services Corporation Retirement
Committee, Joseph W. Dello Russo, and Eric Burns*

31