IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | : : : | MDL 1586 |
| In re Excelsior, Federated, Scudder and AMCAP | : : : | Case No. 04-MD-15861 |
| [Federated Sub-Track] | : | Nos. 04-928 |

...o0o...

**MEMORANDUM**

In a memorandum opinion issued November 3, 2005, I deferred ruling on the class plaintiffs' claims against the "Outside Trustee" defendants under the Exchange Act of 1934.[1] After consideration of the parties' arguments and supplemental memoranda, I will grant the defendants' motion to dismiss these remaining claims against the Outside Trustees.

To state a valid claim under § 10(b) and Rule 10b-5, plaintiffs must make allegations of scienter in compliance with Fed.R.Civ.P. 9(b) and the PSLRA. *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F.Supp.2d 334, 369 (D.Md. 2004) ("[P]laintiffs must successfully plead with particularity facts specific to each individual defendant that create a strong inference the defendant acted knowingly or recklessly."); 15 U.S.C. § 78u-4(b)(2).  The plaintiffs have failed to allege scienter on the part of the Outside Trustees with sufficient particularity.

---

[1] These individuals are: Laurence D. Ellis, Thomas G. Bigley, John T. Conroy, Jr., Nicholas P. Constantakis, John F. Cunningham, Peter E. Madden, Charles F. Mansfield, Jr., John E. Murray, Jr., Marjorie P. Smuts, and John S. Walsh.  At times they are referred to as "outside director/trustees," but the court will use "Outside Trustees" for the sake of brevity.  The plaintiffs have voluntarily dismissed their claims against the Outside Trustees under Sections 36(b) and 48(a) of the Investment Company Act. *See* Order of February 24, 2006, No. 04-MD-15861 (docket entry no. 639).

1

Most importantly, the complaint contains no allegations whatsoever regarding any individual Outside Trustee, instead relying on the "group pleading" or "group published information" doctrine previously rejected by this court.  *See Royal Ahold*, 351 F.Supp.2d at 370.  This doctrine, where adopted, generally applies to "corporate officers and directors who are alleged to be in day-to-day control of the company." *Id.* at 369 (quoting *In re Criimi Mae Sec. Litig.*, 94 F.Supp.2d 652, 657 n.4 (D.Md. 2000).  The plaintiffs would have this rule extended to outside directors who "by virtue of their status or a special relationship with the corporation...have access to information more akin to a corporate insider." *In re Indep. Energy Holdings PLC Sec. Litig.*, 154 F.Supp.2d 741, 768 (S.D.N.Y. 2001).  Even if the court were to reverse itself, accept the "group pleading" doctrine, and extend it to such outside directors, however, the plaintiffs have failed to show that the Outside Trustees possessed such a relationship with Federated.  The complaint states generally that the Outside Trustees "are responsible for managing the business affairs, and for exercising all the powers, of the Federated Fund Complex," (¶ 37) and includes a more specific allegation that a majority of disinterested directors must grant annual approval of Federated's advisory agreements (¶ 78).[2]  In addition, the complaint refers to mutual fund trustees' particular duties to consumers (¶ 135).[3]  These allegations do not sufficiently indicate that these Outside Trustees had "access to information

---

[2] All paragraph citations are to the plaintiffs' complaint.  Only the allegations in the complaint are relevant to this motion to dismiss, as opposed to any conclusory allegations in the plaintiffs' briefs.  *See Royal Ahold*, 351 F.Supp.2d at 373 n.26.

[3] In their brief, the plaintiffs also cite to provisions of the Investment Company Act of 1940 as establishing special duties for directors of mutual fund companies.  *See* 15 U.S.C.A. §§ 80a-2(a)(41); 80a-15(c).  The plaintiffs do not, however, allege that the Outside Trustees violated these sections of the ICA, and have dismissed their claims under that Act against the Outside Trustees.

more akin to a corporate insider." *See Andrews v. Fitzgerald*, 823 F.Supp. 356, 374 (M.D.N.C. 1993) (even under group pleading doctrine, "[p]laintiffs must allege facts of day-to-day involvement in the affairs of the [business entity]").

Without any direct evidence that the Outside Trustees directed, condoned, or had knowledge of the market timing practices, the plaintiffs instead allege that the Outside Trustees had access to relevant information but "fail[ed] to detect and put an end to the unlawful practices" (¶ 137). Their factual basis for alleging such constructive knowledge, however, is tenuous. The complaint states that, at some imprecise time, Federated issued a mass mailing indicating that its "tolerance of market timing activity has expired," (¶ 89), and that the head of Federated's retail broker/dealer area was at some point trying to get the timing at Federated under control because it "had an industry-wide reputation for being 'soft' on timing" (¶ 90). One mass mailing and a reference to the company's "reputation," with no allegation that the Outside Trustees were actually aware of either, are not enough to impute knowledge of the relevant activities to them.[4] *See Tischler v. Baltimore Bancorp*, 801 F.Supp. 1493, 1500-02 (D.Md. 1992) (declining to dismiss outside directors against whom the plaintiffs had made particularized allegations of knowledge, but dismissing outside directors who were "not alleged to have the same type of 'inside' knowledge of [the company's] financial information."); *cf. In re Spiegel, Inc. Sec. Litig.*, 382 F.Supp.2d 989, 1019 (N.D.Ill 2004) (declining to dismiss director defendants where "[p]laintiffs have done much more than simply identify the...Defendants' titles," having alleged that they were "intimately involved with, and had significant control over, Spiegel's

---

[4] In addition, as defendants point out, these factual allegations could support a favorable inference as to the Outside Trustees' state of mind, inasmuch as they reflect remedial measures taken by Federated. *See Royal Ahold*, 352 F.Supp.2d at 384.

3

operations and specific disclosures (or nondisclosures)").

Furthermore, even if the court accepted such inferences of knowledge, the plaintiffs' allegations would be insufficient to create a strong inference that the Outside Trustees acted recklessly, much less knowingly. The Fourth Circuit has defined recklessness in this context as "an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Royal Ahold*, 351 F.Supp.2d at 368 (quoting *Ottmann*, 353 F.3d at 343).[5] Even considering mutual fund trustees' special responsibilities, the plaintiffs' allegation that the Outside Trustees simply "fail[ed] to detect and put an end to the unlawful practices" does not satisfy the high standard for recklessness in this context.

The plaintiffs' allegation that the Outside Trustees signed registration statements and prospectuses containing misleading information (*see*, *e.g.*, ¶¶ 37, 127) is likewise insufficient to establish liability, at least without a strong inference of scienter. *See Royal Ahold*, 351 F.Supp.2d at 385 (dismissing executive because "[o]ther than his positions...and the fact that he signed some SEC filings, very little is alleged"); *cf. Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061-63 (9th Cir. 2000) (holding that a corporate officer who, with scienter, signs SEC filings "makes a statement" within the meaning of § 10(b) and Rule 10b-5).[6]

---

[5] The *Ottmann* court noted that "[s]uch severe recklessness is, in essence, a slightly lesser species of intentional misconduct." (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir.2001)).

[6] Contrary to the plaintiffs' parenthetical, *Howard* concerned an inside director, namely a CEO, and the court specifically distinguished cases that involved outside directors. *See* 228 F.3d at 1062-63. Other cases cited by the plaintiffs similarly do not support their position. For

4

Given its lack of sufficient allegations as to the Outside Trustees' conduct, the complaint also does not state claims for scheme liability against the Trustees. *See Royal Ahold*, 351 F.Supp.2d at 372; *In re Mutual Funds Inv. Litig.*, 384 F.Supp.2d 845, 858 (D.Md. 2005) ("[The defendants'] mere knowledge that their activities might assist in the accomplishment of a fraudulent scheme is not sufficient to render them liable under Rule 10b-5. Rather, they must themselves have been co-designers of the scheme or have committed a manipulative or deceptive act in furtherance of the scheme.") (quotation omitted).

Although the plaintiffs' claims against the Outside Trustees for control liability under § 20(a) of the 1934 Act are only subject to Fed.R.Civ.P. 8(a), the complaint does not sufficiently allege facts showing how the individual Outside Trustees had the power to control or influence the specific corporate policies at issue. *See Royal Ahold*, 351 F.Supp.2d at 409-10; *In re MicroStrategy, Inc. Sec. Litig.*, 115 F.Supp.2d 620, 661 (E.D.Va. 2000).

In sum, the court will dismiss all remaining investor class claims against the Outside

---

example, the court in *In re Reliance Sec. Litig.*, 135 F.Supp.2d 480, 503-08 (D.Del. 2001), refused to grant summary judgment for outside directors where plaintiffs established that individual defendants had signed specific misleading SEC filings and established a sufficient inference of recklessness based on the defendants' own statements and their imputed knowledge of financial information "critical to the financial integrity" of the company. The court in *Schaffer v. Evolving Systems, Inc.*, 29 F.Supp.2d 1213, 1225 (D.Colo 1998), applied the group pleading doctrine to outside directors who had signed company prospectuses. The court in *In re Cabletron Systems, Inc.*, 311 F.3d 11, 41 (1st Cir. 2002), declined to dismiss outside directors because they had signed SEC filings and "[e]ach is alleged to have made stock sales that contribute to a strong inference of scienter against them"). The court in *Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir. 1984), found that a director who was "uninvolved with [the company's] day to day operations" and had "nothing to do with preparation of the [relevant] prospectuses" did not possess the requisite scienter. *Id.* at 832. *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000), involved high-level management officers who received weekly reports detailing the conduct at issue.

5

Trustees in this subtrack.[7]  Counsel should submit a proposed implementing order within two weeks.

|  |  |
|---|---|
| __June 1, 2006__ | __/s/__ |
| Date | Catherine C. Blake |
|  | United States District Judge |

---

[7] By letter dated March 13, 2006 (docket entry no. 662), John F. Donahue and J. Christopher Donahue also have requested reconsideration.  Considering the Donahues' inside management positions and the specific allegation that they were aware of the timing arrangements negotiated with Canary, the denial of the Donahues' motion to dismiss the investor class claims under the 1934 Act will not be reconsidered at this time.