IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | : : : | MDL 1586 |
| In re Excelsior, Federated, Scudder and AMCAP | : : : | Case No. 04-MD-15861 04-cv-1288 04-cv-1298 |
| [Scudder Sub-Track] | : | |

...o0o...

**MEMORANDUM**

Now pending in this MDL litigation involving alleged market timing and late trading is a discovery dispute concerning plaintiffs' request for production of documents previously disclosed by the Scudder/Deutsche defendants to regulatory officials, specifically the SEC and the New York Attorney General's Office, in connection with those agencies' investigation of similar allegations against the defendants.  The documents, for which attorney-client privilege and/or work-product protection are now claimed, were disclosed to regulators subject to a confidentiality agreement; the defendants accordingly seek to avoid production to the plaintiffs by relying on the doctrine of selective waiver.  For the reasons that follow selective waiver is rejected and the defendants will be ordered to produce the documents.

During the regulatory cases, the defendants produced to the SEC and the NYAG numerous documents originally generated by, or representing communication with, in-house legal counsel prior to the beginning of the regulatory investigations in July 2003[1] as well as documents created by National Economic Research Associates ("NERA"), which was retained by the defendants' outside counsel as an economic consultant in the market timing

---

[1] On the sample of the privilege log produced for my review, the dates of the documents range from August 1999 to June 2003.

investigation.[2]  They did so subject to "non-waiver" and "confidentiality" agreements executed September 1, 2004.[3]  Both agreements state that "Deutsche Bank does not intend to waive the protection of the attorney work product doctrine, attorney-client privilege, or any other privilege applicable as to third parties;" further, the SEC and the NYAG agreed that they "will maintain the confidentiality of the Confidential Materials pursuant to this agreement and will not disclose them to any third party, except to the extent that the [SEC or NYAG] determines that disclosure is otherwise required by law or would be in furtherance of the [SEC's or NYAG's] discharge of its duties and responsibilities."  The investigations ultimately resulted in settlements between the defendants and both regulatory agencies including payment of disgorgement, restitution, and civil penalties totaling over $100 million to be distributed for the benefit of shareholders of the affected funds.

In the present case, the class plaintiffs requested production of all documents provided to the SEC or other regulatory agencies with regard to market timing or late trading.[4]  In connection with that production, the defendants withheld approximately 36,000 pages of documents

---

[2] From documents submitted *ex parte*, it appears that NERA analyzed trades made by specific entities or individuals in various Scudder and/or Kemper funds.

[3] The defendants assert that they refused to produce the documents to the Illinois Securities Department ("ISD"), because the ISD would not enter a confidentiality agreement.

[4] The document production request sought:

> All DOCUMENTS and materials that DEFENDANTS have produced or provided in connection with inquiries or investigations by governmental, regulatory, or self-regulatory agencies (including but not limited to the United States Securities and Exchange Commission and any department or agency of any State of the United States) with regard to MARKET TIMING or LATE TRADING.

identified on a privilege log (contained on 19 Excel spreadsheets) in the Bates number range DBC-000001 - DBC-0036086, including NERA's economic analysis, asserting attorney-client privilege and/or work product protection.  For purposes of this dispute, the plaintiffs do not challenge the attorney-client or work-product designations, but rather assert that any protection has been waived.[5]

There is no question that the defendants have disclosed otherwise protected material, voluntarily, to an adversary, for their own benefit in negotiating a settlement with the regulators.[6] Absent a confidentiality agreement, under established Fourth Circuit law that disclosure likely would constitute a subject-matter waiver as to the attorney-client and non-opinion work product material, as well as a waiver of the opinion work-product protection limited to the documents actually disclosed.  *In re Martin Marietta Corp.*, 856 F.2d 619, 623-26 (4th Cir. 1988).  The Fourth Circuit has not directly addressed the extent to which a confidentiality agreement may protect against waiver, although in *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) it explained that waiver of work product protection may occur in circumstances where the attorney "cannot reasonably expect to limit the future use of the otherwise protected material."  *See also U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982); *Continental Cas. Co. v. Under Armour, Inc.*, 537 F.Supp.2d 761, 770-73 (D. Md. 2008); In *re Royal Ahold*, 230 F.R.D. 433, 437 (D. Md. 2005).

The Tenth Circuit comprehensively reviewed the law on selective waiver in its 2006 opinion rejecting that concept, even in the context of a confidentiality agreement.  *In re Qwest Commc'n Int'l Inc.*, 450 F.3d 1179, 1194 (10th Cir. 2006).  The *Qwest* analysis is persuasive.

---

[5] I am not addressing any issue of "inadvertent" disclosure.

[6] Of course the disclosures also benefit the government agencies and arguably the public.

Like the circumstances in this case, the confidentiality agreements at issue in *Qwest* permitted the SEC and the DOJ to use the documents "as required by law and in furtherance of the discharge of their obligations." *Id.* While the DOJ agreement in *Qwest* spelled out more extensively the agency's right to share the documents with other government agencies, *id.* at 1181-82, the SEC agreement appears to have been identical to the agreement in this case and, in any event, the confidentiality provision in this case is sufficiently broad to have permitted extensive disclosure had the matters not settled and had the SEC or the NYAG found such disclosures necessary to press their investigations forward. As in *Qwest*, applying selective waiver to the Scudder/Deutsche documents would essentially be adopting a rule that places control of the defendants' attorney-client privilege and work-product protection in the hands of the agencies. *Id.* at 1194. The scope of the waiver would depend on the fortuity of which and how many disclosures an agency found appropriate in furtherance of the discharge of its duties.[7]

Other courts also have found a confidentiality agreement insufficient to prevent waiver. *See In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 306-07 (6th Cir. 2002); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1430 (3rd Cir. 1991); *cf. In re Steinhardt Partners*, 9 F.3d 230, 236 (2d Cir. 1993); *In re IPO Sec. Lit.*, ___ F.R.D. ___ 2008 WL 400933, at *3-5 (S.D.N.Y. 2008); *but see Jaffe v. Household Int'l*, 244 F.R.D. 412, 433 (N.D. Ill.

---

[7] The defendants point to the fact that the SEC "resisted production of and withheld" the relevant documents when sought by respondents in an SEC administrative proceeding. The records appear to show that the SEC in fact noted the confidentiality agreement in response to a subpoena and requested an opportunity for the Scudder/Deutsche defendants to brief the issue for the administrative law judge ("ALJ"). The ALJ nonetheless assumed that production of the documents had occurred pursuant to his order; the matter was resolved before a motion to compel had to be filed. While it is correct that the SEC to some extent "resisted" production, this history also illustrates the risk that, once disclosed to regulators, the documents may be more widely disseminated as the progress of related administrative proceedings may require.

2006). Without detailing all the arguments, I find that the weight of authority, with which I agree, supports rejection of selective waiver in this case. The defendants' voluntary disclosure of otherwise protected material to the SEC and NYAG, despite the entry of a confidentiality agreement, results in waiver.

The remaining issue, however, concerns the extent of the waiver. While it is not clear from the letter briefs, nor from the document production request cited by plaintiffs, plaintiffs' counsel indicated during a conference call that they were asserting subject matter waiver as to any attorney-client and non-opinion work product, not simply waiver as to the actual documents disclosed. In light of the confidentiality agreements that were entered, the unclear state of Fourth Circuit law on the effect of those agreements, the efforts to maintain confidentiality in the face of other subpoenas, and the limited extent (if any) of disclosures that have been made beyond the SEC and the NYAG, I will not find subject matter waiver under the facts and circumstances of this case simply based on the disclosures to the SEC and the NYAG.[8] Waiver will be limited to the documents actually disclosed.

A separate Order follows.

    July 7, 2008                                              /s/
          Date                                                   Catherine C. Blake
                                                                      United States District Judge

---

[8] I am not of course ruling on the scope of any other basis for waiver that may be presented later in the case.